Louise R. Jones v. Commissioner. Durwood O. Jones v. Commissioner.
Jones v. Commissioner
Docket Nos. 45653, 45654.
United States Tax Court
1953 Tax Ct. Memo LEXIS 13; 12 T.C.M. (CCH) 1437; T.C.M. (RIA) 54006; December 29, 1953
*13 Held: A dissolution agreement executed December 8, 1943, by petitioner, Durwood O. Jones, and his partner, Andy Jones, effectuated a purchase by the former of the latter's interest in a certain bus transportation franchise and in the lease to which such franchise was subject. Held, further, respondent did not err in his determination that the entire proceeds therefrom were includible in the taxable income of petitioners. John P. Dwyer, Esq., First National Bank Building, Albuquerque, N. Mex., for the petitioners. Frank C. Conley, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax of petitioners as follows: Year
Louise R. Jones
Durwood O. Jones
1944
$2,294.74
$2,266.31
1945
1,851.05
1,909.15
1946
236.77
245.93
*14 The questions presented are whether the amounts paid by petitioners to a former partner after dissolution of a partnership constitute the cost of acquiring the latter's rights and interests in a bus transportation franchise, rather than a distributable share of income arising from a joint ownership of such franchise, and, if the former, whether petitioners are entitled to depreciation or amortization deductions therefor? Findings of Fact The stipulation of facts with exhibits attached is adopted, and, by this reference, made a part hereof. The petitioners are husband and wife who filed their respective individual income tax returns for the calendar years 1944, 1945, and 1946 on a community property basis, with the collector of internal revenue for the district of New Mexico at Albuquerque. For convenience, the husband petitioner, Durwood O. Jones, will hereafter be referred to as the petitioner. In 1942, petitioner and his cousin, Andy Jones (hereinafter called Andy), were partners in an insurance and abstract business in Clivis, New Mexico. As of August 1, 1942, petitioner and Andy formed a partnership to be known as Portair Transportation Company (hereinafter called the partnership), *15 for the purpose of operating bus lines between Clovis and the air base located nearby and other points to be designated. On September 14, 1942, Certificate of Public Convenience and Necessity No. 589 was issued by the State Corporation Commission of New Mexico to petitioner and Andy, doing business as Portair Transportation Company, authorizing them to operate scheduled bus transportation between Clovis and Clovis air base. Pursuant to such franchise, petitioner and Andy operated the bus line from September through December of 1942. On December 21, 1942, petitioner and Andy, as owners and operators of the franchise granted by Certificate No. 589 entered into a lease contract with O. L. Ted Taylor, doing business as Victory Bus Lines. Under the terms of this lease, Taylor was to operate the bus transporation system called for in Certificate No. 589 and pay the partnership, as a weekly rental therefor, 10 per cent of the gross receipts derived therefrom. Victory Bus Lines provided its own buses and no management was thereafter required on the part of the partnership. Andy entered the Service in August, 1943, and was discharged therefrom in October, 1945. On December 8, 1943, petitioner *16 and Andy executed a written agreement in dissolution of their partnership. Such agreement provided in material part, as follows: "It is * * * understood and agreed that the said parties own jointly a contract between them and O. L. Ted Taylor, doing business as the Victory Bus Line in Clovis, New Mexico, under which contract said sums of money are paid each week, that the proceeds above expenses from said contract so long as it shall remain in force and effect, is divided equally between the parties hereto. "That the transportation system or systems, including the Clovis Transit Company, operating the red and white buses and Clovis Yellow Cab, together with all permits, franchises and equipment are to be owned by first party who is to derive all benefits therefrom and pay all indebtedness thereof. The agreement relative to the transportation system is also to go into effect January 1, 1944. That first party agrees to bear all expenses incident to the transfer of all titles, franchises, permits, etc. and second party agrees to sign all transfers, applications for transfers, assignments, etc. that are necessary when requested to do so by the first party. That first party agrees to *17 hold second party harmless and protect him in all cases where it is necessary to use second party's name in the operation of the transfer of the transportation business on and after January 1, 1944. [1]" Both prior to and subsequent to the execution of the foregoing contract of dissolution, the rental checks from Victory Bus Lines were made payable to petitioner and Andy. These rentals were reported in the 1943 returns of the partnership. In 1944, 1945, and 1946, the petitioners reported one-half of the lease rentals in their returns as community income. In August, 1946, Andy executed an assignment of all his interest in Certificate No. 589 to petitioner, such assignment to be effective September 2, 1946. Opinion VAN FOSSAN, Judge: We are here called upon to construe the dissolution agreement between petitioner and Andy and to determine whether, consonant with the intentions of the parties thereto, there was, in fact, effected, a purchase and sale of Andy's half interest in the bus transportation franchise in controversy and the lease to which it was subject. Respondent has so determined *18 and here takes the position that the total proceeds received under the Taylor lease are taxable to petitioner as ordinary income under section 22 (a), Internal Revenue Code. It is petitioner's contention, that, following the dissolution agreement, he and Andy remained joint owners of the franchise and retained a joint interest in the lease agreement with Taylor and that, therefore, he is taxable upon but one-half of the receipts therefrom. The contract of dissolution herein involved was interpreted by the United States District Court for the District of Colorado in [Andy] Jones et ux. v. United States, 96 Fed. Supp. 973, affirmed 174 [194] Fed. (2d) 783, in which case it was held that there was a sale by Andy Jones to the present petitioner (Durwood O. Jones) of his interest in the franchise. It was also held that this constituted a sale of a capital asset notwithstanding that, by the terms of the agreement, the seller received the right to share in the proceeds of the franchise so long as the Taylor lease remained in effect. The Court further held the contract to be ambiguous in its terms, and, accordingly, permitted testimony as to the *19 intent of the parties to the agreement. On mature consideration and after careful analysis, the Court held as above stated. In its opinion the following passage appears: "In the instant case the provisions of the contract in regard to the transportation system owned by the partnership do not state with sufficient clarity their mutual intentions. The language could be construed to disclose an intent to retain joint ownership in Franchise 589 for the duration of the lease agreement with Taylor but all other permits and franchises to be owned by Durwood Jones after January 1, 1944; or a different construction would indicate an intent to vest Durwood Jones with ownership in all permits and franchises but Andy Jones reserved the right to share in the proceeds from the bus franchise for the duration of Taylor's lease. For the reasons stated above the court concludes the latter construction conforms to the parties' intentions." The Government which, in the Jones case above cited, was contending for the same result as that urged by taxpayer here, prosecuted an appeal to the Court of Appeals for the Tenth Circuit, which Court affirmed the lower Court, holding that the lower Court was correct *20 in permitting testimony as to intent because of ambiguity and that there was substantial evidence to support the finding made by the District Court as to the interpretation of the contract. Petitioner here, in an effort to avoid the impact of the above decisions, relies on the testimony of the present petitioner and the draftsman of the contract, neither of whom testified in the cited case. The Government, on its behalf, presented testimony of Andy Jones, the moving party in Jones v. United States, supra. There is a sharp conflict between the opposing parties. We have considered the testimony carefully, have studied the analysis and the holding of the District Court and the Court of Appeals and thereupon have come to the conclusion that the additional testimony before us does not warrant or require us to render a decision contrary to that of the District Court as affirmed. We accordingly hold that there was a sale of the franchise by Andy Jones to present petitioner, that the periodic payments were installment payments on the purchase price, and that petitioner is taxable on the whole of the proceeds received. The petitioner claims as an alternative that if respondent *21 be sustained on the main point in controversy, the petitioner is entitled to amortization or depreciation on its cost. We see no merit in the claim. The evidence before us does not establish any basis for amortization or depreciation. So far as the record shows, the franchise was perpetual. On the issue thus raised, petitioner must fail. Decisions will be entered for the respondent. Footnotes
1. Petitioner was the first party and Andy was the second party to the agreement.↩